BROWNLEE & OTHERS, Respondents, vs. ALLEN, Appellant.

1. A. leased to H. a tract of land upon which was a sulphur spring. A. was to make certain improvements on the land. H. was to reside upon it, provide the buildings with furniture, victualling and attendance, and give his whole time to the superintendence, care and management of the place, with a view to make it a popular resort for recreation and health, and a source of profit to the parties. As rent, A. (or his legal representatives) was to receive one half of the net profits, deducting necessary expenses for furniture, supplies, &c., and any loss was to be equally divided. All furniture or other personal property, purchased or acquired by reason of the agreement, was to be jointly owned by the parties. A. was held liable as a partner to a third person, of whom H. purchased materials for fitting up the buildings.

*Appeal from St. Louis Law Commissioner's Court.*

This was an action for goods sold and delivered, brought against Hawley & Allen, as partners in the management of the Cheltenham Springs. Hawley did not answer, and a judgment by default was rendered against him. Allen answered, denying any partnership with Hawley, by whom the goods were purchased.

The cause was submitted on an agreed statement of facts, from which it appeared that on the 12th of May, 1852, Allen & Hawley entered into an agreement in writing, by which Allen leased to Hawley, for the term of eight years, the Sulphur Spring tract, near St. Louis, on the following conditions: Allen agreed to make certain specified improvements at a cost of not to exceed $5000. Further improvements might be made out of the earnings of the business of the place, if both parties agreed to it. Hawley agreed to go upon the premises with his wife to reside, and to give his whole time to the superintendence, care and management of the place, and to supply the buildings with proper furniture, victualling and attendance, with a view of making the place a respectable and popular resort for the recreation and health of visitors, and a source of profit to the parties. Hawley agreed to open and keep

regular books of account, showing all the items of receipt and expenditure, and to report a balance sheet monthly to Allen. Hawley was to contract no debt for which Allen would be liable to an amount exceeding $100, without Allen's consent, under penalty of forfeiture of the contract. The contract might at any time be dissolved by mutual consent, and if, during the second year, it should appear that the business of the place would not pay a profit annually equal to six per cent. on $50,000, the contract might be terminated, at the option of either party, upon thirty days' notice. Hawley was to make out and exhibit to Allen, semi-annually, an accurate statement of receipts and expenditures ; and in consideration of rent, there was to be paid to Allen or his legal representatives, one half of the net profits, after allowing for all necessary expenses, including furniture, supplies, servants and repairs, (except such as were agreed to be done by Allen,) and any loss was to be equally divided. A failure by Hawley to make out true statements, or to pay over to Allen his share of the profits, or to perform any other of the conditions of the agreement, was to operate " forthwith to cancel and annul the agreement," and authorize Allen or his legal representatives forthwith to resume possession of the premises and all improvements. Allen was to give no personal attention to the business. Hawley was to make no charge for the services of himself and wife, other than was covered by one half of the net profits. All furniture and other personal property, purchased and acquired by reason of the agreement, was to be jointly owned by the parties. Allen reserved the right at all times to visit and inspect the premises, and to sell the same subject to the contract.

The goods sued for were purchased by Hawley, between June and August, 1852, charged to him in the plaintiffs' books, and used by him in fitting up the buildings mentioned in the above agreement. Plaintiffs did not know of the existence of the agreement when they sold the goods. Hawley gave his own note for the goods in November, 1852, which was

Brownlee *v.* Allen.

never paid. Hawley never complied with that stipulation in the agreement which required him to supply the buildings with proper furniture, &c. The business was carried on in the name of Hawley alone while it lasted. No part of the furniture brought on the premises by Hawley ever came into the hands of Allen, but was either sold under executions or deeds of trust against Allen, or remains in his possession. On the 17th of September, 1853, Allen notified Hawley in writing that the contract had been cancelled and annulled, and that he then cancelled and annulled it for all future time. Allen endorsed and paid notes given for debts contracted by Hawley in his own name in the purchase of goods, furniture, &c., on account of said business, one of which debts was contracted as late as January, 1853.

Upon the facts thus agreed upon, the court below gave judgment for the plaintiffs against Allen, who appealed to this court.

*Glover & Richardson*, for appellant. 1. The agreement did not constitute Hawley & Allen partners, as between themselves, and they are not liable as such to third persons, unless their acts or declarations have misled such third persons to act upon the presumption of a partnership, which is not pretended in this case, as it is admitted that the plaintiffs were ignorant of the agreement when they furnished the goods. 2. The fact that Allen was to receive a portion of the profits by way of *rent* does not make him a partner. (6 Halsted, 181. Story's Part. § 43, 44, 45. 12 Conn. 69.) The rent was to be paid to Allen or *his legal representatives*, whereas if it was a partnership, the lease would be terminated by his death. 3. An agreement to share the losses as well as the profits will only create a partnership where an agreement to share the profits alone would do it. (17 Mass. 197. 10 Vermont, 170.) 4. But admitting that Allen & Hawley were partners, Allen is not liable for goods furnished to fit up the buildings. By the terms of the agreement, Allen was to put into the concern, as his part of the capital stock, the land and buildings. Hawley,

on his part, was to supply the buildings with furniture, &c., and he purchased of the plaintiffs a portion of the furniture which he had agreed to put into the house as so much of his share of the capital stock. (*Saville* v. *Robertson*, 4 D. & E. top p. 398.)

*Wickham & Snead*, for respondents. I. The agreement dated May 12, 1852, contained all the essential ingredients of a partnership agreement. (Story on Part. § 2, 27. 16 Johns. Rep. 34. 3 Kent, 24.) II. At least, it created a partnership between Hawley & Allen as to third persons. (Story on Part. § 34, 35, 36, 58, 63. 3 Kent, 32. 16 Johns. Rep. 34.) III. The debt sued for was contracted by Hawley, for the use of the business contemplated by the agreement, during the term thereby established. 1. It was contracted during the first year, and during that time, the partnership could only be dissolved by mutual consent. 2. Notice of dissolution was not given by Allen to Hawley until long after the date of the last item in the account. 3. Hawley's failure to comply with any of the stipulations in the agreement only gave Allen a *right* to dissolve the copartnership, which he did not exercise until after the debt sued upon was contracted. 4. Allen, by giving the notice dated September 17, 1853, recognized the existence of the partnership to that date. IV. Hawley's fail-ure to comply with any stipulations in the agreement does not affect Allen's liability as a partner, to third persons. V. The fact that the goods were sold to Hawley, and entered in plain-tiffs' books simply against him does not exempt Allen from liability, it being admitted that they were used in the partnership and that the existence of the partnership was not then known to plaintiffs. (Story on Part. § 101, 138, 393, 63.) VI. The partnership agreement clearly shows that Hawley was to contribute to the business only the services of himself and wife, and that all necessary expenses of furniture, supplies, &c., were to be paid out of the profits of the business, and in the event of loss, by the partners equally.

RYLAND, Judge, delivered the opinion of the court.

The only matter to which our attention has been called, is in relation to the partnership of Hawley & Allen. From the facts agreed, the court below considered them as partners in the Cheltenham Springs, and declared the law to be in favor of the plaintiffs. In this declaration of the law, this court concurs with the court below. The facts agreed to clearly show that there was a partnership existing between these defendants in this Cheltenham Springs adventure, and such being the case, Allen is bound, as such partner, for the goods purchased by his co-partner of the plaintiffs. The judgment of the court below is therefore affirmed; the other judges concurring.

*Glover & Richardson*, for appellant.
*Wickham & Snead*, for respondent.